The next case, number 22-1198, Maine Forest Products Council et al. versus Patty Cormier et al. Mr. Anton, please take the podium and introduce yourself on the record to begin. Good morning, Your Honors, and may it please the Court, Assistant Attorney General Jason Anton for Appellants Patty Cormier and Aaron Fry. And Chief Judge Barron, I'd like to reserve one minute for rebuttal. You may. This case concerns a Maine law that either regulates immigration itself or constrains the federal government's administration of its H-2A program. While the penalties that Maine law assesses for employment of nonresidents in a single forestry transportation position will likely influence whether a subset of future H-2A applications are filed or granted, that does not render Maine's exercise of its historical power to regulate employment within its borders an immigration law, never mind one that conflicts with federal law. Counsel, you seem to place considerable emphasis on the fact that the Maine Attorney General has made what you refer to as a narrowing construction of this law. What's the significance of that narrowing construction with respect to the plaintiff's preemption item? The problem that the Attorney General recognizes with respect to preemption is that, and this is sort of unique to the nature of a law that concerns a fleeting, a temporally defined position, is that at the moment, there are individuals who have been granted H-2A status to perform point-to-point forestry transportation, and they were granted under a set of conditions, conditions that did not include public law 280 at the time. So at the point where that law takes effect, it could suddenly change the conditions or parameters of those H-2A visas. It may, in fact, lead to employers no longer wishing to employ the individuals who have H-2A status. And in recognition of that problem, that temporal and temporary issue, the Attorney General has interpreted the statute as only applying to future H-2A applications, and that would ensure that those H-2A applications that have already been granted, that the rug isn't pulled out from underneath, that those terms may be completed under the terms and with the assumptions made by the Federal Government when they were granted. And I think... So is that a contention that if we, that under the unnarrowed construction, the state law is preempted? We think there is a significant preemption problem unnarrowed, Your Honor. What is it? And it's that these H-2A visas, however we refer to them, Your Honor, I realize there's some discussion of that in the briefing, that they were granted with an assessment of state law that existed at the time based on all the information available. But I don't see what the preemption problem is on your theory because all you're saying is state law changed. When state law changes, state law changes. And historically, we're entitled to change it as we wish. That's correct. And the concern that the Attorney General has is that state law was assessed when the visa was granted for a given period of time. But you're not saying anything about that. You're just saying here's what it is now. Do whatever you want, Federal Government, with that fact. Well, the concern is sort of cases like Dandemudi or Rogers where basically that the H-2A visa might suddenly have to be revoked because an employer doesn't want to risk the violations after it already applied and got the visa. But why is that a preemption problem? So the concern in that context, again, is there's sort of a... The Federal Government has had its say and said that we approve employment for a given year. But to not just go forward, the Federal Government wants to have its say, and you're saying it can't. Why isn't that the same preemption problem? Going forward, the Federal Government wants to have its say, and you're saying it can't. We still think the Federal Government can, but it would be an assessment when the employment law is in place. But it wants to have its say independent of your assessment. You're saying it can't. Well, we think that the Federal Government would do so in a couple of ways. First of all, in the context of the SWA, the State Workforce Agency, having to certify that the H-2A position is compliant with state law at the time of application of state employment law. That's one. And two, there's an independent assessment made by both the Department of Labor and the Department of Homeland Security that the law does not adversely affect local labor conditions. And that's where Maine's law sort of... It doesn't... There's no distinct way in which it plays a role in that determination, but it is a pretty major signal at that point that Maine is concerned about the impact of employment in this particular position on local workers. And that's why, essentially, as I mentioned, we don't want a Rogers-type situation where the state is redoing what the Federal Government has already determined, but for future applications, the Federal Government then has the chance to make its determination based on the state of state law at the time. And that's why we think the interpretation here is important and weighs into the calculus both for preemption but also for the Equal Protection Clause. With respect to preemption, we think the district court erred in not finding that the presumption against preemption applied in that, on its face, Maine law is not a regulation of immigration. It does not determine when someone may enter or leave the country. Instead, it is a specific regulation that says only U.S. residents may perform a particular job within Maine. And this is just the sort of quintessentially local regulation recognized in Dukanis and in this court in Caper and its restatement of what the holding of Dukanis was. And we think, therefore, it's entitled to a presumption against preemption. We don't think that there's sufficient showing here that that presumption has been overcome. And certainly, you know, appellees have said quite a bit about the downstream impact of this law on immigration decisions. We think the case law is quite clear with respect to downstream implications on immigration decisions do not render a law an immigration law. So then the question becomes whether there is a clear and manifest purpose that Congress has indicated that would preempt Maine's law. And we don't think there is conflict preemption in that context here, the sole type of preemption that has been argued by appellees. First, with respect to H-2A workers, as we just discussed, for those who are currently employed and point-to-point transportation and H-2A status can complete that term of employment that was approved by the federal government. But as far as the purpose more broadly is concerned, as we argued in our briefs, Maine's law is consistent with federal law in that it's animated by this vital state interest that Dukanis identified about the well-being of local workers consistent with the H-2A program's sensitivity to local labor conditions. And that sensitivity is evident in two ways. One, as I mentioned, the need for any H-2A position to be compliant with state employment law. That's something the SWA has to certify at the job order stage before any labor certification is granted. But second, more broadly, the need for H-2A employment, one of the main purposes of the H-2A program, to not interfere and have an adverse impact on the local labor market. And who did Congress imagine was entitled to make that second determination? That final determination is made by the Department of Labor and the Department of Homeland Security.  What the state of Maine is signaling, though, to those two entities is there is a major concern, and this is what Senator Jackson... Well, it's signaling me one thing, but is, under the Maine law, is there any way, as you read it, going forward for an H-2A visa of this sort to be granted? Can the Department of Labor make the determination that there is a labor shortage that private employers need to make up for with a foreign worker, and therefore the H-2A visa can be granted? Is the Department of Labor able to make that determination? That determination could be made, but not the prior determination. We think that it would be inconsistent to grant an H-2A status position because of the employment law that says that is a violation of state law. Right, and so the... And another way of saying that Maine has taken that decision away from the federal government and that, to that extent, the H-2A program cannot operate the way it's supposed to be functioning. I'd say two things in response, Your Honor. First of all, I think it's subtly different for the state to say this is a violation of state employment law and then to direct the federal government to make a particular determination. That determination remains at the discretion of the department. Well, you're just saying that the federal statute contemplated that the state could make this determination. That's correct. That was the second point I was going to make. And what suggests that that's so? Textually, in the legislative history, etc. Because it does seem that it would be... It's not intuitive to me that the federal government, in passing this statute, left it open for all states to make it so that no H-2A visas could ever be granted. Well, to your... But that's the consequence of your argument, right? That Congress did contemplate that if every state wanted to pass a statute saying you cannot hire foreign workers because there's no need for them, that would be perfectly fine, and no H-2A visa could be granted, notwithstanding private employers thinking that the state decision was wrong. I think there would be a more major preemption issue in the context of a state barring any H-2A employment. Right. Because then the program would cease to exist within the state. And I think it would also be difficult to prove some rational basis. Put aside that point. With respect to any particular class, Congress contemplated, in your view, that a state could determine that none of them can be granted. I think as to a specific position, by virtue of the Code of Federal Regulation... And maybe two classes? At some point... Maybe three classes, maybe four classes? It's a little bit complicated, right? There is a line-drawing issue, Your Honor. I don't think it's that issue in this case, though, given the narrow... So going to the threshold point, what in the text of the statute, or in the purposes, suggests that Congress did contemplate that they were reserving to states that authority? I don't have the particular cite with me. I'm happy to grab it, Your Honor. I believe it's Section 6... It's 510C3, but I can pull the particular citation. But that's what says that the SWA must review and certify that the job order is compliant with federal and state employment law. And absent that compliance, there can be no H-2A visa granted. Now, that section refers to clearance orders, which talks about the particular position. You're not talking about the position. And that goes on with a series of state laws, and does say, and other employment-related laws. But under the canon of Houston's generals, this order is not like any of the other orders that are listed in that convention. I suppose... Again, I apologize, Your Honor. I don't have the text of the statute in front of me. I don't believe there was debate within the briefing or below as to the meaning of this section, and I don't believe that Appellee's... But this sticks out like a sore thumb. You're talking about wage and hour regulations and things of that sort, and all of a sudden you pop in this, this only residents can be employed to do point-to-point transportation. That's bad. I think the state... I apologize, Your Honor. But even if this portion of the statute applies, which I don't think it does, it's a very fundamental book to try and hang this on when you look at this law as opposed to the type of laws that this statute says to take into account. I think the state's argument in this context, and again, we'd be happy to brief it further below, would be that these are all conditions of employment. This is just another condition or qualification of employment, namely residency in the United States. And that's why the law is contemplated by... ...as a condition of employment. And how does that square with your argument that this is not an immigration statute? It seems to me you've just made it classically an immigration statute. Well, I think this is similar to Duqanis, Your Honor, in that a law that regulates employment by virtue of saying what the immigration status... For example, I apologize, I should rephrase this. In Duqanis, there was a regulation of, I believe, illegal aliens in the country and what sort of work they could perform depending on the impact on the local labor market. And Duqanis made clear that that wasn't an immigration law, even though it touched on immigration, even though it was defined, perhaps, by immigration. That was for purposes of field preemption, not conflict preemption. That's correct. And I solely mean to refer to this in the context of whether this is an immigration law or an employment law with respect to the presumption against preemption. And I apologize if I misperceived your question, Judge Selya, but I think that's why it's not an immigration law. You're absolutely right, Judge Barron, that Duqanis is a field preemption case and not a conflict preemption case. But I think that's sort of the rationale we have here, that we have a law passed by Congress that contemplates a strong role for the states and that this sort of law, both because of that employment... Let me just put your two points together if I'm following. You say the presumption against preemption applies. Yes, Your Honor. And if the presumption against preemption applies, then we have to use that in reading the relevant provision of the text that you just said. Correct. And you say that text is just not clear enough to exclude from its ambit this type of employment law and, therefore, can't be preempted because you can read the text to contemplate this type of provision. That's precisely right, and then more broadly... Just following that up, wouldn't that then mean that the same would be true of a state law that prohibited it for all classes of workers? There may be a stronger problem in that context. How? How? I mean, just to say that, logically, given your reasoning, how would an opinion that came out the way you want here not also suggest that a state could pass this as to all workers? When you're more broadly looking at the purposes of the H-2A program, a state barring its existence, its very existence in a given state... Right, because you're contemplating that the existence contemplates a state can prohibit it. I think this is... I don't see how you can have it both ways, and maybe the right answer then is just have it the whole way. But I don't really follow. If there is a purpose that is important for this to exist, even if a state doesn't want it to, then I don't quite understand how what you're saying doesn't mean that Congress contemplated that this was optional for states to allow, and that if states want to prohibit all foreign workers, they're free and clear to do so. All this means is that absent a state doing that, we will assess what the employer wants, but there's just no preemption. You may be correct, Your Honor, and as I mentioned previously, I think there's a potential greater equal protection clause problem when you have a full H-2A ban. Perhaps on the rational basis piece in particular. The other thing I'd say... Again, perhaps the Court is right that it is not preempted, even if there's a separate constitutional problem with fully permitting a state to bar H-2A employment within its borders. But conflict preemption as it pertains to purposes is... There's a big... But we have to identify the purpose, and you seem to identify the purpose as permitting H-2A workers the extent states want them. I think the purpose... I think that's correct, and there's a degree... I think there's a degree analysis with respect to how much tension there is between the state law and the federal law. That's where the Madeira case we cited, mere tension isn't sufficient, but it might be where a state says all H-2A employment is not permissible, that there could be a preemption problem. Again, we haven't briefed this issue, and I don't think the State of Maine has a particular position on that issue, and there may be a separate constitutional problem, but we think in this case, with respect to the narrow provisions of Public Law 280, that there is not a preemption problem. There's no clear and manifest obstacle preemption here with respect to Maine's law and the existence of the H-2A program. Thank you, Your Honor. Thank you. At this time, Mr. Reichel, please introduce yourself on the record to begin. May it please the Court, Nolan Reichel for Appellee's Maine Forest Products Council, Pepin Lumber, and Stephan Odette. Let me begin by just discussing the specific regulation that was the subject of these recent questions. It's 20 CFR 653-501C3, Romanet III, and I have it here. And it refers to a decision that has to be made about whether the, quote, working conditions comply with, and then it lists a variety of traditional state labor laws, such as minimum wage, child labor, social security, health and safety, et cetera. And it ends that list, that specific list, with the then general add-on and other employment-related laws. Now, Judge Selyo was correct that the application of the Euston-Generis Canon of Statutory Construction informs how we are to read that phrase, other employment-related laws. We are to read it consistent with the specific examples given in the regulation, which relate to traditional things like child labor and minimum wage. We don't even need to apply the Euston-Generis Canon because the regulation itself refers to working conditions. But that said, the state's argument here is that that three-letter, four-word, excuse me, that four-word phrase, other employment-related laws, that is tucked into one regulation, not in the statute, in a regulation promulgated by the executive, that those four... Take me up a level. Is the claim here that the preemption is a consequence solely of the regulation, or is it of the statute in your view? It's both. The statute creates and permits for agricultural workers to come to the United States on a temporary basis. And is there anything in the statute that indicates whether Congress had a position one way or the other as to whether states could make the kind of judgment that the state made here? So we do not bring and express preemption argument. There is no specific... And the variety of INA cases that come before it also... Well, let me put it this way. Suppose the regulation here was written to include as a provisor, when it says other employment-related laws, including laws concerning whether a person was a foreign citizen. Would that have been a legitimate exercise of regulatory authority? It's a good question. I don't think it would be. So you're saying the statute itself precludes this condition. I'm saying there's no evidence that when Congress granted the executive rule-making authority under the INA that it authorized the executive to open the door to individual states to completely ban the operation of Hodge Piper. So now if you put in the presumption against preemption, it's not enough to say that there's no evidence of that sort. You need there to be evidence that Congress did not want to authorize that. Is there evidence of that sort? Well, let me add, we don't rely only on the statute, just to be clear. So we believe that the regulations have clear preemptive force as well. So it's not that we're saying that it's only the statute. It is both. From an obstacle preemption perspective, there's no way to square the act with the statutory and regulatory scheme created under the INA to further the H-2A program. Why? Because what the state has done is to arrogate to itself the authority or to purport to do so. What I'm saying is that just sort of begs the question. In other words, if the question is did Congress contemplate that states could decide essentially to opt out of the H-2A visa program operating within them, the question is what makes us, what gives us an answer to whether Congress did contemplate that or didn't. And I don't hear anything that says the text tells us the answer to that. You say the text of the regulation does because of this or other, and that has to be construed this way, not with saying the presumption against preemption. Is there anything beyond the text that tells me that states couldn't opt out? So there is no, I am not aware of any legislative history that expressly grants or contemplated that the states could opt out of the program. None has been cited, and none exists as far as we know. I think what the court needs to do is take the case. But I'm asking the opposite. So is there an express statement from Congress that says states are not permitted to nullify this or some strong indication of legislative history that would lead us to think it's just implausible that Congress did contemplate that? I mean, I'm just looking for something to help me out in trying to figure out the answer to this. So the short answer is we have not cited and are not aware of an express statement from Congress saying that states are not permitted to nullify congressional acts within state borders. When you say nullify, it's not nullifying the act if the act contemplates that they can opt out. And it does not. And the court can discern that from its text. From what? From the text of the INA. What text indicates that? The text authorizing and creating the existence of the H-2A program. The purpose of the program is to allow employers within the United States to bring foreign workers into different jurisdictions within this country to perform work. That is the purpose of the statute and the text of the statute. Even when their states say otherwise? Correct. And what indicates that last point? That's what I'm trying to figure out. That's the whole case. And I concede, Your Honor, that there is no express statement barring states from doing that. And I don't think a statement like that is necessary to find preemption. Well, then what's the conflict? What makes it seem like it has to be the case that the state could not have this as a condition? That's what I'm trying to figure out. The program, the state, the federal legislation could not operate. It could not exist if states were free, selectively, to go industry by industry or state by state, statewide, to simply nullify the program. If it would be the state's condition. Was there some indication that states were frustrating it and that was the need for the statute? No. So then that one thing, like in the airbags case, the guy, there's some indication that, you know, the agency had to set the new rule because of what had happened before. So that gave some reason for the court to think, oh, well, it would be silly to now say that that choice is still open when the whole point of the reg was to foreclose that choice. We don't have that kind of history here. So one possibility is all it was was a way of enabling people to come into the country for employers who needed it without addressing one way or the other what should happen if a state thought foreign workers should not be coming into the state. Whatever the other legal problems with that are, whether it's a dormant form of commerce clause, whether it's an equal protection problem, but just from Congress's perspective, I'm just trying to figure out what indicates that Congress's purpose was to foreclose the state from making this choice. Well, I think we have to begin with the general principle, Your Honor, that immigration is a matter traditionally committed almost exclusively to the authority of the United States. So when we look at preemption doctrine, defense, foreign relations, immigration, it's difficult to conceive of a subject matter of legislation that is elevated above those three areas that are committed to federal authority. It does cut somewhat against you on that position, because this is not trying to establish the rules for immigration. It's just a condition on who can be employed within the state, which is somewhat analogous to DeCantis, isn't it? No, and that takes us to the question of whether the presumption against preemption should apply here. It should not. This is an immigration regulation. It expressly refers to the H-2A program in the statute. This isn't a case where the state was using a euphemism or a workaround to avoid preemption. They came right out and said- Well, they're just making clear that that's not exempted from the prohibition against foreign workers. Understood. I mean, I guess- So there's-within the context of the H-2A program, there is no daylight between immigration and employment status. In fact, employment status, the job opportunity, the employment opportunity- Well, just help me out. How does that fit with DeCantis? So first off, DeCantis was a case that involved-as interpreted in DeCantis, there was a-DeCantis involved a remand and there was a question about the scope of the state law at issue. Ultimately, DeCantis was interpreted as referring to a state law that concerned undocumented immigration, not legal immigration. And so that-and when you get to Natsios, Natsios distinguishes and understands DeCantis to operate in that way. So states have been afforded much greater latitude to regulating the impacts of undocumented immigration into the United States. That is not this case. And that is how DeCantis is distinguished. And in fact, when you look at-when you look at Natsios' discussion of DeCantis, Natsios posits a sort of platonic ideal of a statute that would be preempted. And it describes that statute as a law that would prohibit the employment of any aliens, even those allowed to work under federal law. And in the very next sentence, Natsios says, DeCantis considered whether those laws would be permissible and rejected them. So DeCantis has, as interpreted by Natsios, DeCantis has considered whether laws that ban federally authorized legal immigration and the work that those federally authorized legal immigrants can perform, it's assessed whether those laws would be preempted, and it's said that they would be. But that isn't addressing this case, right? Because this is applying to non-residents of the state. That Natsios language is suggesting even if you were a resident of the state, if you were not a U.S. citizen, you would be barred from employment. And they're saying that would be preempted, correct? Well, it says persons-any employment of any alien who is authorized to perform- Including residents. In other words, the difference here is that this is applying only to non-residents. Correct. Natsios doesn't draw that distinction, Your Honor. Well, it doesn't address it. It does not. That's correct. Let me come back, though, to the point about whether the presumption against preemption should apply. As I said, there is no daylight between immigration status and job opportunity here. There are a variety of immigration statuses where you're permitted to come into the country, and then there's a subsidiary question of whether you can qualify for some sort of work permit. The situation here is the exact opposite. You first have to have the job opportunity. So negating, prohibiting the job opportunity, as the Act does, necessarily and completely eliminates the ability to immigrate into the United States. And so when the state talks about downstream impacts, this isn't a chain of dominoes that has to fall to bar the immigration from occurring. It's the first domino. It's the only domino. If you do not have the job opportunity, you cannot come into the country. So barring the job opportunity is an immigration regulation for preemption purposes. And for that reason, the presumption against preemption should not apply here. And for that reason, the burden should be on the state to come forward with some evidence that Congress has authorized or that the executive in its rulemaking authority contemplated that states would go ahead and nullify those statutes. I thought we held in Capron that even when the presumption against preemption does not apply, the burden remains on the parties seeking preemption, not on the state. Well, I think in Capron the court was the court did not clearly apply the presumption against preemption. That's correct. We assumed that it was not applying, but we said nonetheless the burden is on the parties seeking preemption. Yep. So that would suggest that the state doesn't have to come up with any affirmative evidence. The parties seeking preemption does. Well, Your Honor, I think what the state needs to do is to explain how the phrase other employment related laws, four words, are intended to serve as an open door to completely nullify the H-2A program within its borders. There is no authority for that proposition in the regulatory rulemaking, in the legislative history, or by any court that has ever addressed that question. Let me just conclude. I want to go back to Judge Sellea's very first question, which is what is the preemption consequence? What is the relevance to the preemption doctrine of the so-called narrowing construction offered by the Attorney General? Now, we don't think the narrowing construction should be applied, but let's assume for a moment that it was. It has no relevance from a preemption perspective. A state statute that says beginning next year we will no longer recognize U.S. treaties within our jurisdiction, that doesn't save preemption, that only highlights the preemption problem. Thank you. Counsel, may I ask just a couple of questions? Does the statute or the regulations there under cover what happens if there is no S-W-A, how those functions get carried forward? I don't know. Do you know whether there are any states that have attempted to eliminate S-W-As? As a means of trying to eliminate effectively the operation of the H-2A program within its borders, I'm not aware that any state has attempted to do that. I wasn't putting that condition on the question. I'm not aware that any state has opted out of the S-W-A process. I don't know whether that's occurred or not. Okay. Thank you. But I take it the federal statute doesn't require there to be an S-W-A process, because you'd have a commandeering problem if there did, right? Well, I think what's interesting about that point, Your Honor, is take, for example, there's a regulation that the state cites in its brief that says that the S-W-A gets to make final decisions about the compliance with federal statutes of the application. And the state points out that the only way to get around that is to appeal to the federal government. And so that, again, only highlights the supremacy of the federal government in this role. The federal government has the ultimate authority, even in the context of applying and construing the appropriateness of the S-W-A applications, the federal government has the ultimate decision about whether those applications should be, you know, granted or moved along in the process or not. Can I generalize your point? Just tell me if you think this is a fair generalization, a general characterization. To the extent that this is a collaborative program between the states and the federal government, the state's role is limited, it's pretty precisely defined, and the federal government still retains the ultimate control. Am I fairly characterizing what you would say? You're exactly characterizing what I would say. Thank you. Thank you. Thank you, Attorney Reichel. At this time, Attorney Anton, please come back to the podium and reintroduce yourself on the record to begin. You have a one-minute rebuttal. May it please the Court, Assistant Attorney General Jason Anton for the Appellants, and my apologies for forgetting to put my mask back on as I return to council table. Just very briefly, as I mentioned, insofar as there is any dispute as to the meaning of the regulation at issue that refers to employment-related laws, the state's interpretation of that provision has not been challenged until today. We would certainly appreciate the opportunity to brief the issue insofar as there is any question as to whether or not it would include Public Law 280. And with that, unless there are any further questions. Just two. One, you're not challenging the authority of the agency, or are you, of the authority to write a reg that would be preemptive? The authority of which agency? The state? I'm sorry. The Department of Labor. The reg that we just talked about, the CFR provision, your contention is that provision does not preempt because of the way where others should be construed, correct? Mm-hmm. That's correct. Suppose they amend it, say we agree with you, and then Department of Labor amends the reg to make it clear that we misconstrue our other. That might pose a greater preemption issue. We'd have the second argument that Maine's law is still consistent more broadly with the need to protect local workers, but I agree. But you're not suggesting that Congress did not authorize the federal agency to preempt? That's correct. We're not challenging that contention. So the whole question is just whether the agency here preempted or not? I think the question is whether the regulations passed consistently. And we haven't heard from the agency. Has the agency weighed in on any other case about this? Not that I'm aware of. So in Capron, we asked the Department of State to weigh in on the preemptive effect of their regulation since it was a dispute between two parties not involved in the Department of State about whether the Department of State intended to preempt. Would there be any concern with us asking the Department of Labor to tell us whether they think this reg preempts? I don't think the state of Maine would have any objection to that, Your Honor. Okay. Thank you. Thank you, Your Honor. That concludes argument in this case.